**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**LATISHA E. OLSEN** **PLAINTIFF**

**v.** **NO. 3:20-cv-00299 PSH**

**KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration** **DEFENDANT**

# MEMORANDUM OPINION AND ORDER

In this case, plaintiff Latisha E. Olsen ("Olsen") maintains that the findings of an Administrative Law Judge ("ALJ") are not supported by substantial evidence on the record as a whole.[1] It is Olsen's sole contention that her residual functional capacity was not properly assessed. Specifically, she maintains that the assessment does not account for the paresthesia, or tingling and burning, in her upper extremities, an impairment that limits her ability to reach, handle, and finger.

---

[1] The question for the Court is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." See Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the [ALJ's] conclusion." See Id. "'Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law.'" See Lucus v. Saul, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting Collins v. Astrue, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted)).

Olsen was born on February 15, 1985, and was thirty-three years old on March 15, 2018, the date she filed her application for supplemental security income payments. In the application, she alleged that she became disabled on January 1, 2018.

The record reflects that Olsen has complained of paresthesia since well before the alleged onset date.[2] For instance, on February 17, 2017, Olsen saw a rheumatologist, Dr. Safwan Sakr, M.D., ("Sakr") for complaints that included paresthesia. See Transcript at 292-297. At the presentation, Olsen reported a one year history of a "slowly progressive paresthesia in [her extremities]." See Transcript at 292. She reported occasional exercise in the form of yoga and represented that her hobbies included cooking, gardening, and cleaning. A physical examination was consistent with fibromyalgia. Olsen had tenderness in parts of her hands and wrists but otherwise had a normal grip in both hands. Sakr's diagnoses included fibromyalgia syndrome and paresthesia in Olsen's legs, but he made no mention of paresthesia in her upper extremities. He prescribed Flexeril, Savella, and increased gabapentin for her pain.

2 The ALJ noted that supplemental security income payments are not payable "prior to the month following the month in which the application was filed ...," see Transcript at 10, but nevertheless considered Olsen's complete medical history. The Court will do likewise but only with respect to the evidence relevant to the paresthesia in Olsen's upper extremities.

Olsen thereafter saw Sakr on multiple occasions. See Transcript at 282-286 (04/07/2017), 451-456 (06/05/2017), 783-788 (09/26/2017), 587-592, (11/15/2017), 576-581 (03/19/2018). Olsen continued to complain of joint and muscle pain and the effects of paresthesia, or what was characterized in one progress note as "wandering paresthesia." See Transcript at 783. She also reported numbness and tingling. She continued to report occasional exercise and hobbies in the form of cooking, gardening, and cleaning. Her physical examinations were largely unremarkable. Sakr continued to diagnose impairments that included fibromyalgia syndrome and paresthesia, but he made no mention of paresthesia in her upper extremities. He continued to prescribe medication for her pain. By the April 19, 2018, presentation, he observed that her symptoms were improving. See Transcript at 576.

On August 9, 2017, Olsen established care with Darla Johnston ("Johnston"), an APRN. See Transcript at 501-512. A physical examination revealed "generalized weakness to all extremities, pain, and tenderness at trigger points, joint pain, with swelling and joint pain to bilateral ankles." See Transcript at 508. The examination also revealed, though, that Olsen had full muscle strength in her upper extremities. Johnston recommended, inter alia, increased exercise and continued Olsen on pain medication.

Olsen thereafter saw Johnston or Dedra Richardson, also an APRN, on several occasions. See Transcript at 513-524 (10/03/2017), 525-536 (12/27/2017), 537-554, 759-761 (01/03/2018), 555-562 (01/24/2018), 563-572, 812-814 (01/29/2018), 708-719 (02/01/2018), 720-730, 829-831 (02/27/2018), 731-734, 737-746 (03/21/2018). The progress notes from the presentations are similar and reflect findings largely consistent with the August 9, 2017, presentation. The notes reflect that Olsen reported having been previously diagnosed with Raynaud's syndrome, and a positive Antinuclear Antibody ("ANA") Test resulted in a diagnosis of scleroderma. She also complained of increased anxiety caused by situational factors. At the February 1, 2018, presentation, she complained of tingling in her hands but appears to have attributed the tingling to stress. See Transcript at 717.

On February 21, 2018, Olsen saw Casey Duncan, a CNP. See Transcript at 582-586. Olsen's history was recorded to be as follows:

> Mrs. Olsen is a known fibromyalgia patient at this office. States she stopped taking her cymbalta because her psychiatrist started her on venlafaxine, with good response. She also [stopped] her lyrica due to poor effectiveness. States she started having right arm pain that would be sharp shooting pains that would radiate to her upper back and neck. C/o aching pain in her joints along with wide-spread myofascial pain. ... She does admit to ... bluish-purple hands and feet in the cold ... She also has episodic hand joint pain, swelling and stiffness. She denies dry or tight skin or fingers ...

See Transcript at 582. Olsen continued to report occasional exercise and represented that her hobbies included cooking, gardening, and cleaning. A physical examination was consistent with fibromyalgia, and she was continued on pain medication.

Between February 27, 2018, and March 22, 2018, Olsen sought medical attention at Baxter Regional Medical Center for unspecified rheumatoid arthritis, see Transcript at 852-853 (02/27/2018); headaches and left side numbness, see Transcript at 847-850 (03/15/2018); and joint and elbow pain, see Transcript at 844-845 (03/22/2018). The medical testing was unremarkable, as were the physical examinations. No limitations were observed, but fibromyalgia and paresthesia were diagnosed.

On July 19, 2018, Olsen saw Dr. Ira Chatman, M.D., ("Chatman") for pain medication management. See Transcript at 884-891. Olsen complained of generalized body pain and reported that she had been experiencing the pain since the summer of 2016. She also reported "increasing tingling and numbness in both upper extremities which is worse at night," which Chatman believed was a pattern "somewhat consistent with [carpal tunnel syndrome]." See Transcript at 884. He performed a physical examination and made, in part, the following findings:

> ... Left elbow has normal sensation. Right elbow has normal sensation. There is normal sensation noted in the left arm. There is normal sensation noted in the right arm. Left wrist has normal sensation. Right wrist has normal sensation. Left fingers [have] normal sensation. Right fingers [have] normal sensation. ...

See Transcript at 889. She also had normal strength and tone in her upper extremities. He assessed chronic pain syndrome and fibromyalgia and prescribed meloxicam and tizanidine for her pain. A nerve conduction study and a EMG of her upper extremities were performed at his direction, and the results were unremarkable. See Transcript at 893-894.

Olsen saw Chatman again on August 21, 2018. See Transcript at 899-903. At the presentation, Olsen reported that she had stopped taking the pain medication Chatman had prescribed because it had been only partially effective. A physical examination was largely unremarkable. He again assessed chronic pain syndrome and fibromyalgia and encouraged her to begin re-taking her medication.

Olsen completed a series of documents in connection with her application for supplemental security income payments. See Transcript at 199-200, 201-208. In a pain report, she represented that she experiences pain and numbness in her arms and hands. In a function report, she represented that her daily activities include caring for her children,

tending to her home, and grocery shopping. She has difficulty attending to some of her personal care, but she can prepare meals, perform some housework, drive an automobile, and shop in stores one to two times a week. At one time, she was able to sew but can no longer do so because she has difficulty using her hands.

Olsen testified during the administrative hearing. See Transcript at 33-50. She lives with her husband and six children. She helps out around the house by cooking and cleaning. She is able to drive an automobile but has difficulty doing so because of her headaches, her left arm and elbow pain, and the pain in her feet. Olsen previously worked as a bookkeeper but left the job when she became pregnant and developed difficulties walking. She cannot return to the job because of the sitting and concentration required of the job and because of the numbness she experiences in her hands. She was asked about her Raynaud's syndrome, and she testified as follows:

> Well, it just—the tips of my fingers—the tips of my fingers, and then, like, my feet will go numb to where I can't feel them to walk, but then my fingers are just really numb and they get this tingling prickling, almost like they're being pricked over and over again with, like, a needle kind of feeling, if that makes sense.

See Transcript at 37. The pain and numbness in her feet occasionally force her to stay in bed or sit in a recliner for extended periods of time. Her Raynaud's syndrome causes her hands and feet to turn different colors, and the change in color is brought about by changes in temperature, stress, and panic attacks. The syndrome also causes her to have difficulty writing.[3]

The ALJ found at step two of the sequential evaluation process that Olsen's severe impairments include degenerative disc disease and fibromyalgia. The ALJ assessed Olsen's residual functional capacity and found that Olsen is capable of performing a reduced range of light work. The ALJ made no accommodation for the paresthesia in Olsen's upper extremities because he believed her claim of difficulties using her hands was inconsistent with the evidence in the record. The ALJ found at step four that Olsen is unable to perform her past relevant work. At step five, the ALJ relied upon the testimony of a vocational expert and found that there is work available for a hypothetical individual of Olsen's age, education, work experience, and residual functional capacity. The ALJ concluded that Olsen has not been under a disability as defined by the Social Security Act since the date she filed her application.

---

[3] Shaley Ann Shaw ("Shaw"), Olsen's mother, also testified during the administrative hearing. See Transcript at 50-54. Shaw's testimony was consistent with Olsen's testimony.

Olsen maintains that her residual functional capacity was erroneously assessed. She so maintains because the assessment does not account for the paresthesia in her upper extremities. She concedes that "the symptoms have not been directly related to a medically determinable impairment" but maintains that the symptoms have a "definite vocational impact" and should have been considered. See Docket Entry 15 at CM/ECF 10-11.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite her limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). The ALJ cannot rely solely upon the medical evidence in assessing a claimant's residual functional capacity; instead, the ALJ must evaluate all of the evidence—including the non-medical evidence—in making the assessment. See Grindley v. Kijakazi, --- F.4th ---, 2021 WL 3556102, 2 (8th Cir. 2021). As to the claimant's subjective complaints, the ALJ must consider whether the claimant has a medically determinable impairment that could reasonably be expected to produce pain or other symptoms and, if so, evaluate the intensity, persistence, and limiting effects of the pain or other symptoms. In evaluating the intensity, persistence, and limiting effects of the claimant's pain or other symptoms, the ALJ must consider all the evidence, including evidence of the following:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms ...; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

See Social Security Ruling 16-3p. See also 20 CFR 404.1529; Polaski v. Heckler, 751 F.3d 943 (8th Cir. 1984) (identifying factors substantially similar to those of Social Security Ruling 16-3p).

The question for the ALJ was not whether Olsen has pain and tingling in her upper extremities. The question was the extent to which the pain and tingling limit her ability to perform work-related activities, specifically, whether the pain and tingling impact her ability to reach, handle, and finger. The ALJ noted his obligation to consider the consistency of her symptoms pursuant to Social Security Ruling 16-3p, and he found that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not consistent with the evidence. The ALJ could find as he did as his findings are supported by substantial evidence on the record as a whole. The Court so finds for the following reasons.

First, the record is not clear as to whether Olsen has a medically determinable impairment that could reasonably be expected to produce pain and tingling in her upper extremities. Although she has been diagnosed with fibromyalgia, Raynaud's syndrome, and scleroderma, all of which can cause pain, she admits in her brief that "her symptoms have not been directly related to a medically determinable impairment."

Second, notwithstanding the foregoing, the ALJ adequately considered the medical evidence relevant to Olsen's limitation in her upper extremities. For instance, he could and did observe that the medical testing is unremarkable. Although she reported a previous diagnosis of Raynaud's syndrome, and a positive ANA Test resulted in a diagnosis of scleroderma, the results of a nerve conduction study and EMG of her upper extremities were unremarkable. He could and did also observe that the results of her physical examinations were unremarkable. On February 17, 2017, or well before the alleged onset date, Sakr found tenderness in parts of Olsen's hands and wrists but otherwise found her to have a normal grip in both hands. By April 19, 2018, or approximately three months after the alleged onset date, he observed that her symptoms were improving. When Chatman saw Olsen on July 19, 2018, he observed that she had normal sensation, strength, and tone in her upper extremities.

Third, the ALJ adequately considered the non-medical evidence relevant to Olsen's limitation in her upper extremities. He did so, in part, by considering her daily activities, which include helping care for her children, cooking, cleaning, driving an automobile, and shopping in stores one to two times a week. He considered the type, dosage, effectiveness, and side effects of her medication and could properly note that she discontinued the use of medication that Chatman had prescribed. The ALJ also considered that there were "significant gaps in [Olsen's] history of treatment." See Transcript at 18. Specifically, he could properly note the following:

> ... The record ... reveals that [Olsen] failed to follow-up recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal. Hence, it is noted that [she] did not seek or receive any further treatment for her multiple medical impairments after August 2018, which is over one year ...

See Transcript at 18.

The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. It is not the role of the court to "re-weigh the evidence." See Guilliams v. Barnhart, 393 F.3d 798 (8th Cir. 2005). Here, the ALJ could find as he did with respect

to Olsen's residual functional capacity and her alleged limitation in her upper extremities. Specifically, the ALJ could discount Olsen's allegation, not include it in assessing her residual functional capacity, and not incorporate the allegation into a hypothetical question.

On the basis of the foregoing, the Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Olsen's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 26th day of August, 2021.

UNITED STATES MAGISTRATE JUDGE